MALCO THEATRES, INC., *v.* MURPHY.

4-4444

Opinion delivered November 30, 1936.

*Leo P. McLaughlin* and *Donham & Fulk*, for appellant.

*W. P. Demby, C. Floyd Huff, Jr., J. M. Rowland, Scott Wood* and *Martin, Wootton & Martin*, for appellee.

HUMPHREYS, J. This suit was brought in the circuit court of Garland county by appellee against appellant to recover damages for an injury received by him through its alleged negligence in carelessly permitting debris consisting of loose mortar, sand, etc., to accumulate on the sidewalk in the rear of its building, which was being reconstructed, so as to conceal a barrel hoop that tripped appellee and caused him to fall.

Appellant answered, denying the alleged negligence on its part, and pleading contributory negligence on the part of appellee.

The cause was submitted to a jury upon the pleadings, testimony adduced by the respective parties, and the instructions of the court, resulting in a verdict and consequent judgment against appellant for $2,500, from which is this appeal.

The evidence, as reflected by the record, viewed in its most favorable light to appellee, is, in substance, as follows:

In June, 1935, appellant began the reconstruction of its theatre building on an enormous scale at an expense of about $75,000, and completed the work in October the same year. It blocked off the front of the building so pedestrians could not use the sidewalk or enter the build-

ing from the front side. It tore out the inside of the old building and parts of the front and sidewalls, and carried the debris out through the doors and windows in the rear or back wall onto and over the sidewalk adjacent to the building along Exchange Street. The sidewalk was not only used to deposit the debris, and a passage way to haul a part thereof to a vacant lot across Exchange Street, but was also used as a place to deposit, temporarily, brick and other materials to be used in reconstructing said building. The sidewalk was also used by appellee to mix cement for use on the inside of the building and mortar in rebuilding the walls. There was a mortar box, in which cement and mortar were mixed, kept on the outer edge of the sidewalk on the north part thereof during the time the work of reconstruction progressed. A barrel was kept and used, which stayed on the sidewalk near the mortar box, and which had one hoop off. The sidewalk, during the period of reconstruction of the building, was cluttered with the debris, sand, pieces of boards, broken brick, new materials, etc., and some of the witnesses testified to seeing two barrels instead of one, and several barrel hoops lying around in the debris. The public continued to use the sidewalk mostly in the daytime and sometimes at night in the condition it was by stepping over the piles of sand, around the brick and other things, and on the crushed mortar and loose sand. The scattered mortar and sand was not so deep as to prevent pedestrians from walking upon it. A part of the time, and especially at night, the sidewalk was barricaded at the north and south ends thereof so as to warn and prevent the public from using it, but at other times, the barricades were removed, and the public allowed to use the sidewalk. Usually a watchman was around, but not at all times. The sidewalk in the rear of the building extended north along the side of the Baptist Church building, which adjoined the theatre building. Near the point of the juncture, there was a window opening, through which debris had been thrown from the inside onto the sidewalk, and on Sunday morning, July 28, sand and mortar two inches thick was scattered over the sidewalk in front of the window opening. Appellant

parked his car near this point for the purpose of entering the Sunday School room in the church building. After getting out of the car, he, his daughter, and her girl friend passed over the sidewalk to look through the window opening in order to observe the interior finish of the auditorium, which they understood was very beautiful. Appellee testified relative to the condition of the sidewalk, his approach to the window or opening, and his return therefrom to the place of his injury, as follows:

"I am the plaintiff (appellee). We left my home early in the morning of the accident to get to Sunday School a little bit early. My daughter, Mary, operated the car, and Katherine Yankee and I rode in it. We went down Watt street to Central, up Central to Prospect, up Prospect to Exchange, and then turned on Exchange and parked the car very near the junction of the south wall of the Baptist church, and the north wall of the theatre building.

"About the time we parked the car, Katherine Yankee made some remark about somebody had told her how pretty the theatre was. We three got out of the car and went over to the window in the wall of the theatre building there at the rear—the window next to the church— and looked in the window a short time, probably about a minute. In going to that window, we went over what I took to be some dry, loose mortar, and probably there was some sand and a few loose brick-bats there on the ground up close to the window. There was no obstruction over that passage we went over. The passage itself was as safe as this floor; it just had a soft cushion of what I think was dry, loose mortar. The girls who were with me say that there was some sand there.

"We looked in that window, and I turned to leave, at which time I was at the south side of the window, looking in. I turned and started to the Sunday school, and had only taken a step or two when I stepped on a barrel hoop that I didn't see. I hadn't seen one. I had gone over that same way to the window, and that barrel hoop was concealed by the loose dust of that dry mortar that had spread out toward the church.

"That barrel hoop played some pranks with me. It jiggered me. When I fell, my face was toward a barrel on the sidewalk there. It appeared like, in my entanglement with the barrel hoop, that I, in a measure, had faced about, and had partially turned my face the other way from which I was going when I was trying to catch myself.

"I saw that barrel, which I think was out near the curb on the sidewalk, nearly opposite or a little south of the window we had been looking in. I couldn't rise. My daughter tried to help me up. Katherine Yankee came up, and then others. My eyes were fixed on that barrel, and I wanted to get to it, to give myself some support. I don't know whether I ever reached that barrel or not, but I was trying to get to the barrel. And that barrel had a hoop off of it. They tried to put me in my car, and couldn't do it. Another car drove up, and they put me in the rear seat and drove me out to my home.

"It was hard to say who went first to the window. I think the girls did, and in leaving the window, I think I followed the girls. I went practically over the same route they had traveled, as I was going the same way they had gone. I wasn't looking for the hoop. I would have seen a hoop there, if it had been unconcealed. My natural posture in walking is with a bowed head, and I usually see what is before me on the ground.

"In going over to the window, I did not see anything at all dangerous. Apparently it wasn't any more dangerous than walking on this floor here. All there was, the concrete pavement was cushioned with loose, dry mortar. This mortar was not in pile. It is hard to say how thick it was. It sloped off some toward the church. I guess that dry, loose mortar there was two or three inches deep, and practically level."

The girls with him corroborated his testimony except they did not notice the hoop off the barrel, and did not see the hoop until he had stepped on the edge of it, and become entangled in it. They said the hoop was imbedded in or covered with the mortar and sand, and not observable until he stepped on the edge of it. Appellee was also corroborated by other witnesses as to the

condition of the sidewalk where he fell and broke or fractured his hip.

E. E. Parrish, who was the superintendent of the reconstruction of the theatre building, made the following admission in his testimony:

"As far as any person walking up to the window and looking in, I couldn't see any objection, because there wasn't anything there to hurt him; but there was a sign that said not to come inside."

Appellant contends for a reversal of the judgment:

"First, because there is no substantial testimony tending to show that its employees placed the barrel hoop on the sidewalk; second, that the hoop had not been there a sufficient length of time for appellant, in the exercise of ordinary care, to have discovered its presence and removed it; and third, that appellee is barred from recovering, because he failed to observe it before stepping on it."

We think the presence of a barrel with a hoop off, which had been and was being used by appellant, near a place where a hoop was covered up or imbedded in the loose mortar and sand placed on the sidewalk by appellant, was substantial evidence tending to show that the hoop was a part of the barrel it borrowed, and was using. There is nothing in the record tending to show that anyone else had any barrels or barrel hoop around there except appellant. Appellant suggests that the hoop may have been dropped there by children rolling hoops or by some other person, but, to have found this, the jury would have had to indulge in speculation when it was unnecessary to speculate how it came there.

Another barrel and other hoops were seen by other persons on the sidewalk where appellant had been working some days before appellee was injured, and if it was one of these hoops that caused the injury, it had been there long enough, in the exercise of ordinary care, for appellant to have discovered and removed it.

The evidence is practically undisputed that the hoop was imbedded in the mortar and sand, or concealed in the debris so that one walking on the sidewalk, in the exercise of ordinary care for his own safety, would not

246

or could not observe the hoop as long as it was in that position.

The cases cited by appellant in support of its contention are not applicable to the facts in the instant case. In the cases cited, there was no substantial testimony tending to show that the defendants created the conditions which were the proximate causes of the respective injuries, or that the dangerous conditions had existed for a sufficient length of time for the defendants to have discovered and removed them; whereas, in the instant case there was ample substantial evidence to warrant the jury in finding that the hoop was negligently left where it was by appellant's employees, in fact, that it was appellant's own hoop concealed by its own employees in such a way as to injure any one who might step upon the edge of it.

There is no evidence in the record tending to show that appellee was guilty of contributory negligence.

The judgment is, therefore, affirmed.